**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CHEN SHENG KUN,

Petitioner,

v.

JAMES JANECKA, *et al.*,

Respondents.

Case No. ED CV 26-1280-DMG (AYP)

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION [3]**

Petitioner Chen Sheng Kun, a noncitizen in ongoing removal proceedings who is currently held at the Adelanto Immigration and Customs Enforcement ("ICE") processing center, seeks relief by way of a habeas corpus petition filed pursuant to 28 U.S.C. § 2241. [Doc. # 1.] Petitioner filed an *ex parte* application for temporary restraining order, which the Court converted to a motion for preliminary injunction ("MPI") and scheduled for a hearing based on an expedited briefing schedule. [Doc. # 3.] The hearing took place on April 3, 2026.

Petitioner argues that his arrest and re-detention on March 12, 2026 violated his rights to procedural and substantive due process. *Id.* at 4. He also challenges Respondents' contention that he is subject to mandatory detention. *Id.* The MPI seeks Petitioner's immediate release and an order enjoining Respondents from transferring him out of this District during the action or re-detaining him without notice and a pre-detention hearing,

with the burden on the Government to justify his continued detention. *See also* Opp. [Doc. # 9]; Reply [Doc. # 10].

For the reasons discussed in this Order, the Court orders Respondents to release Petitioner forthwith on the terms of his prior Order of Supervision ("OSUP") and to file a status report regarding their compliance with this Order within five days.

## I.
## BACKGROUND

### A. The Petition

The Petition alleges that Petitioner entered the United States on or about August 16, 2022 at an unknown location. Petition at 4. He was initially detained at a facility in Texas, and a Notice To Appear (form I-862) was issued on September 9, 2022, charging him with being an "alien present in the United States who has not been admitted or paroled" (8 U.S.C. § 1182(a)(6)(A)(i)) and an immigrant lacking valid documentation at the time of application for admission (8 U.S.C. § 1182(a)(7)(A)(i)(I)). *Id.*; *see also* Doc. # 2-2 at 17 (Notice To Appear). An asylum officer determined that Petitioner demonstrated a credible fear of persecution or torture, and he was placed in removal proceedings under 8 U.S.C. § 1229a. Petition at 4. He was subsequently released from ICE custody under an OSUP, form I-220A, and resided in Baldwin Park, California. *Id.* at 5; *see also* Doc. # 2-2 at 20 (September 20, 2022 form noting his release on an OSUP). His immigration hearing is scheduled for October 17, 2028. Petition at 6; *see also* Doc. # 2-2 at 7 (Notice of Internet-Based Hearing). ICE re-arrested him on March 12, 2026.

Petitioner brings his Petition on the basis that his arrest and re-detention violated his rights to procedural and substantive due process as well as Respondents' own regulations and was arbitrary and capricious. He also alleges that he is being denied a bond hearing based on an unlawful application of 8 U.S.C. § 1225(b)(2)'s mandatory detention scheme. *See generally* Petition. As relief, he requests his immediate release, an order that he not be transferred from this District, or an expedited bond hearing and an order of release pending that hearing. He further requests corresponding declaratory relief.

**B. The MPI and Supporting Evidence**

Petitioner attests that he is a citizen and national of the People's Republic of China and generally confirms the allegations of the Petition detailed above. Decl. ¶ 1 [Doc. # 7].

During the time he was released on the OSUP, Petitioner maintained a stable residence, complied with all reporting requirements, and followed all instructions given to him. *Id.* ¶ 6. He did not commit any crimes—indeed, he has no criminal history in the United States whatsoever. *Id.* ¶ 7.

On or about April 20, 2025, he was the victim of a robbery, in which his personal identification cards and legal documents (including those telling him when to report to ICE next) were stolen. He missed one reporting date on approximately May 1, 2025 as a result. *Id.* ¶¶ 8–10. On January 29, 2026, he went to the ICE office and explained what happened, and the ICE officers accepted his explanation. They gave him a new reporting date and changed his reporting method to a cell phone application. *Id.* ¶¶ 11–12.

According to Petitioner, "[a]t some point, ICE officers told me that if they were going to conduct a home visit, they would telephone me first before coming to my home. I relied on this promise." *Id.* ¶ 13. Then—

> [o]n or about February 2026 [*sic*], I briefly left my home to go eat. I had not received any telephone call from ICE. Because ICE had told me they would call before any home visit, and I had not received any call, I believed it was safe to leave my home briefly. While I was out, ICE officers came to my home without calling me first. . . . When they did not find me at home, the ICE officers then called me on the telephone and told me to come to the ICE field office.

*Id.* ¶¶ 14–15. Petitioner went to the ICE field office, and they again accepted his report. *Id.* ¶ 16.

Petitioner states that then, on March 12, 2026, ICE called him to their office, he reported, and he was arrested. *Id.* ¶ 17. As of March 20, 2026, the date of his declaration, he states no one has ever explained why he was arrested or given him paperwork or

documents explaining the basis for his arrest. *Id.* ¶¶ 17–18. He has not received a bond hearing, been given an opportunity to argue for his release, or been informed he has a right to a bond hearing or offered an initial informal interview. *Id.* ¶¶ 19–21.

## II.
## DISCUSSION

### A. Legal Principles

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [petitioner] is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

To obtain such relief, a petitioner must establish four elements: (1) a likelihood of success on the merits, (2) the petitioner will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) the public interest favors an injunction. *Winter*, 555 U.S. at 20.

### B. Likelihood of Success on the Merits

As noted above, Petitioner seeks his immediate release because he contends he is likely to succeed on his argument that his arrest and re-detention violated due process. In response, Respondents do not address his due process arguments. Instead, they argue that Petitioner appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). Opp. at 2. Thus, they oppose immediate release and argue that, at most, Petitioner is entitled to a bond hearing: "Respondents acknowledge that Petitioner's claim in this action appears to be subject to the *Bautista* judgment, the order enforcing the same, and to any applicable appellate proceedings relating to it." Opp. at 2.

Nor is Petitioner's due process argument addressed by *Bautista*. That case concerned the Department of Homeland Security's ("DHS") interpretation of section 1225 and 1226 and certified a class of—

> [a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*See* Doc. # 93, *Bautista*, CV 25-1873-SSS (BFM) (Dec. 18, 2025). The final judgment in *Bautista* declared those class members were not subject to mandatory detention and were entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge. Doc. # 94. *Bautista*, CV 25-1873-SSS (BFM) (Dec. 18, 2025).[1] Neither *Bautista* nor this Court's prior decision on the subject resolves Petitioner's primary due process-based argument. *See* Doc. # 9, *Saldana Guzman v. Noem, et al.*, CV 25-9687-DMG (AGR) (Oct. 31, 2025) (rejecting DHS's interpretation of sections 1225 and 1226).

Petitioner argues that his supervised release was revoked without any notice, pre-deprivation hearing, reasons for the revocation, or informal interview (all assertions unrebutted by the Government). Moreover, Respondents do not dispute that, other than for reasons out of his control, during the nearly four years he was on an OSUP, he complied with the terms thereof. Nor do Respondents dispute that when Petitioner failed to comply with his OSUP after the robbery and the unwarned home visit, he explained the extenuating circumstances, and ICE accepted his explanation and did not find him in violation of those terms. Petitioner also claims that a hearing before an immigration judge would be an empty remedy because "Immigration Judges have been systematically directed to deny bond to detained noncitizens." Reply at 8.

---

[1] The *Bautista* district court ruling is currently stayed to the extent it extends beyond the Central District of California and vacates *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *See* Order at 4, *Bautista v. Exec. Off. for Immigr. Rev.*, Nos. 25-7958, 26-1044 (9th Cir. March 31, 2026).

Based on the current evidentiary record, the Court finds that Petitioner has shown a likelihood of success on the merits of his constitutional claims. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001). "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* When determining what procedures are required by due process, the Court considers the three factors described in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner." *Id.* at 333.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The Supreme Court has repeatedly recognized that individuals who are released from custody, even where such release is conditional, have a liberty interest in their continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty); *Young v. Harper*, 520 U.S. 143, 150 (1997) (applying *Morrissey* pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (finding probationers have a liberty interest)).

Petitioner initially was released from detention following a determination he posed neither a danger nor a flight risk, which Respondents do not contest. *See, e.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). As another District Court noted in a similar case, "[a]lthough in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey*, 408 U.S. at 482). In this case, Petitioner complied with the conditions of his release for nearly four years. As such, he has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards.

The risk of erroneous deprivation of liberty is high. Petitioner received *no process*—no bond or custody redetermination hearing, no initial informal interview, and no notice in advance that he would be re-detained—when he was re-detained. At this juncture, the Court also notes that Petitioner has also shown a likelihood of success on the merits of his claim that Respondents violated their own regulations. Specifically, federal regulations require that a person subject to release will be notified of the reasons for revocation of that release and afforded an initial informal interview promptly after their return to Service custody. *See* 8 C.F.R. § 241.4(l)(1).[2] That did not happen here.

Finally, with respect to the Government's interest, the effort and cost in providing notice and a hearing is minimal, particularly compared to the high risk of erroneous deprivation of the liberty interest at issue. Respondents articulate no argument to the contrary in their Opposition. Thus, Petitioner has demonstrated a strong likelihood of

---

[2] Petitioner cites 8 C.F.R. 241.5, but it appears to the Court the applicable regulation is 8 C.F.R. § 241.4.

prevailing on his argument that he has a protected liberty interest in his release under conditions, that he is entitled to procedural due process protections of notice and a pre-deprivation hearing, and that Respondents' decision to arrest and re-detain him violated this right.[3]

**C. Remaining *Winter* Factors**

Petitioner faces irreparable harm in the absence of judicial intervention. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). Indeed, the Government makes no argument that he does not suffer such irreparable harm.

The remaining two factors for a preliminary injunction—the balance of the equities and public interest—"merge" when the government is the opposing party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotation marks omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Hernandez v. Sessions*, 872 F.3d 976, 996 (2017) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government had violated the INA). The harm to the Government here is minimal. The balance of hardships tips strongly in Petitioner's favor because he will suffer great hardship if this Court were to deny his MPI.

**D. Remedy**

The Court is mindful that "[i]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." *E.*

---

[3] Petitioner also is likely to succeed on the merits of his claim that he is not subject to a policy of mandatory detention. *See* Doc. # 9, *Saldana Guzman*, CV 25-9687-DMG (AGR).

*Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021). Nevertheless, release from custody is the only means to provide complete relief for the ongoing constitutional violation and the absence of pre-deprivation process.

The Court finds persuasive the weight of authority that rejects the argument that the appropriate relief for this due process violation is a post-deprivation hearing. *See, e.g.*, Doc. # 9 *Leonov v. D.H.S.*, ED CV 26-731-SSS (ACCV) (March 5, 2026) ("Respondents present no argument in characterizing Petitioner's claim and requested relief by referring to *Bautista*. . . . [T]here is a marked difference between a pre- and post-deprivation remedy. Petitioner is not requesting a bond hearing."); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *see also* Doc. # 11, *Hernandez v. Noem*, ED CV 26-1089-JWH (KES) (March 20, 2026); Doc. # 10 *Fasihi v. Janecka*, ED CV 26-592-MRA-MBK (Feb. 24, 2026).

As for Petitioner's bond hearing claim, the Court notes that the Ninth Circuit has stayed the trial court order in *Bautista* insofar as it vacated *Matter of Yajure Hurtado*.[4] *See* Order at 4, *Bautista v. Exec. Off. for Immigr. Rev.*, Nos. 25-7958, 26-1044 (9th Cir. March 31, 2026). To the extent immigration judges consistently invoke *Hurtado* as governing authority to deny bond in analogous cases, the Court is inclined to agree with Petitioner that ordering a *Bautista* section 1226(a) bond hearing as a remedial measure would likely be futile.

---

[4] *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding mandatory detention under 8 U.S.C. § 1225(b) applies to those who enter the country without inspection even if apprehended within the United States and not at the border).

**E. Bond**

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

## III.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** the MPI. Respondents shall release Petitioner forthwith, subject to his prior conditions under the OSUP and shall not re-detain him without notice and a future pre-deprivation hearing. At any such hearing, the Government will bear the burden to prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk before Petitioner may be re-detained. Respondents shall return any confiscated property and documents to Petitioner upon his release.

The parties shall file a joint status report regarding compliance with this Order within five days. That status report shall address whether this matter is moot. All subsequent matters in this action will be handled by the assigned United States Magistrate Judge.

**IT IS SO ORDERED**.

DATED: April 3, 2026

Dolly M. Gee

DOLLY M. GEE
CHIEF U.S. DISTRICT JUDGE